*Wayne Circuit Court—In Chancery.*

## ELIZABETH BROWN

### vs.

## WILLIAM BROWN.

*Divorce—Motion to Dismiss Complainant's Solicitor—Collusion—Bob. McKinney.*

The complainant, by the advice of a few persons of that class, who hang on the verge of courts of justice, knowing just enough of the forms of law to make their knowledge (?) dangerous, advised complainant to get rid of Maj. Penniman, her solicitor, so that the collusion desired in the case might be consummated without interruption.

Maj Penniman's argument in opposition to the motion was powerful in eloquence, and perfectly scathing in sarcastic denunciations of Mrs. Brown's lay advisers, Bob. McKinney *et. al.*

The following is the opinion of the Court, REILLY, J., in overruling the motion:

On the 30th day of November, 1875, the complainant in the cause filed her petition praying for a decree of divorce from the defendant. In the petition she sets up her marriage to the defendant at Southfield, in Oakland county, Michigan, in 1848; that since said marriage the parties had resided in this county, and have had seven children born unto them, all of whom are now living, their respective ages ranging from six to twenty-six years; and alleging ill-treatment and intemperance on the part of the defendant as grounds for which the decree of divorce is prayed.

On motion for alimony pending litigation, George H. Penniman, Esq., appearing for complainant, and Messrs W. A. Smith and Edward Minock for defendant, a solicitor's fee of $30 and the sum of $5 per week alimony were ordered. In determining the amount directed to be paid the court took into consideration the very emphatic representations of counsel for defendant that "of their own personal knowledge he was not guilty as charged," and the court supposed and hoped that the difficulties between the parties would be amicably adjusted and the suit withdrawn.

Last Monday, however, a motion was made on behalf of complainant, asking that her solicitor's name, Maj. Penniman, should be expunged from the records, and the motion was supported by alleged facts, to which it is immaterial here to refer.

That every litigant has the right to change solicitors or attorneys as often as fancy dictates I had supposed was a generally admitted doctrine. It is true that courts

will require that the just claim of the discarded solicitor or attorney for services rendered should be satisfied, but further than that I am not aware that courts care to go. In the present case, as this mere act of justice has not been performed or even attempted, and in view of the averments contained in the affidavit of Maj. Penniman, I decline to interfere at this time, and the motion is denied.

I now proceed to the consideration of a much more important point connected with the case, and will preface my observations by a quotation from Mr. Bishop's chapter on collusion, in his work on marriage and divorce. He says: "Collusion, like connivance, will not be presumed without proof, or matter appearing from which it may be affirmatively inferred." The case at bar, in my opinion, is one which demands the most rigid scrutiny of every part of the evidence presented, or which may hereafter be presented.

I will again quote from the same author: "Collusion relates primarily, though not exclusively, to what is done out of court preparatory to a deception to be practiced on the tribunal. But, however just a cause may be in itself, if parties corruptly collude in the management of it before a tribunal, so that in reality both are plaintiffs, while by the record the one appears as plaintiff and the other as defendant, this, in reason, and it is believed in point of authority, will, as collusion, bar proceedings." Lord Penzance, speaking with reference to the facts proved before him to establish collusion said: "I see no impropriety in a husband making his wife a reasonable allowance whilst a suit is pending in

order to save the expense of an application to the court for alimony. If that evidence stood alone, I should hold that it is not sufficient to prove the charge of collusion, but the evidence goes much further. It amounted in substance to this : That the petitioner said to the respondent 'if you don't appear I shall get a divorce cheaper than if you do, therefore keep quiet and I will give you some money when the decree is obtained, and I will do no harm to the correspondent.' If that is not collusion I do not know what is."

Apply the principle so well illustrated to the case at bar. With the statements of counsel for the defendant, that they had a perfect defense to this action, fresh in my memory, I proceeded to examine the affidavits on file, and from them I learn that the parties are negotiating as to the amount of alimony which on the one hand shall be paid and on the other hand accepted, and "that the defendant is not disposed to contest the case very closely, provided the question of alimony can be settled in a satisfactory way." That is to say, if the complainant agrees to take such sum as the defendant is willing to pay, the case goes by default and he will not defeat her bill by proving his defense. In the language of Lord Penzance, "If this is not collusion I don't know what it is."

And next comes this proposition demanding that Maj. Penniman shall be required to withdraw from the case, and he is notified that "Mr. Rob. McKinney is authorized to settle with Mr. Brown, and no one else but him has power to settle," thus taking the case from the hands of an officer of this court, amenable to this

court for his acts, and placing it in the hands of a person over whom this court can exercise no control; and this friend of complainant proposes the arrest of the defendant for perjury for the purpose of "making him come down."

If this is a fair illustration of the advice accepted by these parties I am not surprised at their utter disregard of the effect of this proceeding upon the future welfare of their sons and daughters. Instead of making an earnest effort to harmonize their difficulties and live together as husband and wife should, if not for their own sake, for the sake of their seven children they are responsible for, they seek non-professional and bad advisers, who at once commence negotiations, which, if carried out, separate this husband and wife forever, break up their family and cast a blight over the future existence of their children. It was so apparent to me that these parties were guilty of collusion that on the hearing of this motion I directed the entry of an order rescinding the former order made for the payment of alimony, and there is no doubt in my mind I would be justified in dismissing the case at the present stage on the grounds which I have indicated, but I have decided to give the matter the most careful consideration, and will postpone further action until the case comes up for final disposition.

I deem this to be a fitting· opportunity to state emphatically that while courts may be powerless to stem the tide of petitioners in quest of decrees of divorce, yet this court can and will insist that the performance of every precautionary requirement of the

law shall be rigidly and strictly complied with, and that parties seeking relief shall come into court with clean hands and without the slightest taint of fraud or collusion on their garments.''

Judge Reilly characterized the conduct of the persons who filed the affidavits upon which was based the motion for removal, Mr. Cushman and Wm. McKimmie, as disgraceful, and he regretted that they were not in court, where he might read them a wholesome lesson. He ordered the affidavits stricken from the files.

Judge Reilly's opinion was highly commended by the members of the bar who were present.

G. V. N. Lothrop, C. I. Walker and Levi Bishop each rose in turn and thanked the court for the stand it had taken and the just sentiments it had spoken.

Mr. Lothrop said that he was thankful that such an atmosphere pervaded this court, and he believed that great good would result from it. He considered that the custom of granting divorces on the most flimsy pretexts, which has become so common, has a blighting influence on society, and, to say the least, of doubtful legality.

Mr. Walker thought it high time that parties who aid in disturbing the domestic relations should be most severely rebuked. The court could do no more just or commendable act than to put its foot on the system of collusive divorce.

Mr. Bishop commented with equal severity on the outrageous system of granting divorces that has became

prevalent. He would make a divorce a difficult thing to procure, and a decree to be granted only in the most extreme cases. He would make the proceedings in divorce cases as public as possible. He condemned the practice of keeping the papers and proceedings obscure from the public and suppressed from newspaper reporters.

Mr. Penniman thanked the court for the expressions of confidence in his honesty of purpose and integrity, and said again that he would be perfectly willing to step aside from this case to give way to any respectable solicitor.*

(Feb. 6, 1876.)

---

*This case continued to occupy the attention of the court for several years, with varying fortunes to the respective parties. On April 3d, 1876, the court ordered defendant to pay complainant $6 per week as alimony for two years. Growing out of this, and of a contest over a minor child of the parties, there were proceedings for contempt; and attachments, executions, etc., were issued.

J. Logan Chipman succeeded Maj. Penniman as solicitor for complainant. He afterwards stipulated that Crofoot & Kudner might enjoy that privilege. W. A. Smith and E. Minock were also in turn superseded (by stipulation) by John G. Hawley.